UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| HENRY ZOCH II, Individually and on behalf of THE ESTATE OF HENRY ZOCH III, Deceased | § § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| DAIMLER, A.G., a foreign corporation organized under the laws of Germany; MERCEDES BENZ USA, LLC, a New Jersey limited liability company, SMART USA DISTRIBUTOR, LLC, a Delaware limited liability company; PAG DISTRIBUTOR S1, LLC, a Delaware limited liability company; MAGNA INTERNATIONAL, INC., a foreign corporation organized under the laws of Canada; MAGNA INTERNATIONAL OF AMERICA, INC., a Michigan corporation; and MAGNA SEATING (GERMANY) GmbH f/k/a INTIER AUTOMOTIVE SEATING SYSTEMS, GmbH, a foreign corporation organized under the laws of Germany. | § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 6:16-CV-00057<br><br>JURY DEMAND |
| Defendants. | § | |

## DEFENDANT MAGNA SEATING (GERMANY) GmbH's RULE 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Magna Seating (Germany) GmbH ("Magna Germany") files this Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and alleges:

1

I.    **Introduction.**

Plaintiff's claims against Magna Germany should be dismissed for many of the same reasons his claims should be dismissed against Magna International Inc. and Magna International of America, Inc.  Magna Germany is a German corporation with its principal place of business in Germany.  It has no presence in, or systematic and continuous contacts with, the state of Texas.  Thus, under *Bauman*, there is no general jurisdiction over the company in Texas.

Nor is the German company subject to specific jurisdiction in Texas.  First, the company had no minimum contacts with Texas and did not purposely avail itself of the privileges of doing business in the state.  Magna Germany assembled the seat components in Germany for the subject vehicle according to the specifications of its customer, another German company (smart gmbh).  Magna Germany, however, *did not design or manufacture the particular seat part at issue*.  The company designed the trim, foam, and plastic parts of the seat, but it did not design or manufacture the seat's metal structure, including its fittings and anchorages.

Nor did Magna Germany assemble the seat into the vehicle.  The seat was shipped from Germany to France, where it was assembled into the vehicle by another German company, Daimler AG.  Magna Germany had no involvement or control in the transportation, shipment, distribution or sale of the vehicle.  It did not sell or distribute to the vehicle in Texas and had no expectation that its seat parts would be sold to consumers in Texas.  Even the vehicle's manufacturer, Daimler AG, did not distribute or sell the vehicle in the U.S. or Texas.  In fact, *the subject vehicle did not enter Texas until after it left the stream of commerce*.  The vehicle was first titled in Louisiana.  It was not titled in Texas until years later, as a used vehicle.  Thus, under even the most liberal stream of commerce theory, Magna Germany had no minimum contacts with Texas.

Second, and setting aside the issue of minimum contacts, there is no jurisdiction over Magna Germany because Plaintiff's claims did not arise out of or relate to any activity of the company in Texas.  As stated, Magna Germany did not design or manufacture the seat parts made the basis of Plaintiff's claim.  And the design and assembly work that Magna Germany did perform was done in Germany, not in Texas.  In short, there simply were no contacts by Magna Germany with Texas from which Plaintiff's claims could have arisen.

Finally, the exercise of jurisdiction over Magna Germany in Texas would be unfair regardless of any minimum contacts.  The company has no contacts with Texas and did not design or manufacture the particular seat parts at issue.  The work the company did provide was done under a German agreement, with another German company, and all in Germany.  Requiring the company to defend this case, under a foreign legal system, thousands of miles from home, and when the American seller is already in the case, would offend all notions of fair play and substantial justice.  The claims against Magna Germany should be dismissed.

## II.      Issue to be decided.

The issue to be decided is whether the Court has personal jurisdiction over Magna Seating (Germany) GmbH.  Because jurisdiction is a threshold issue, courts must address it before considering the merits of a case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998).

## III.     Jurisdictional Facts.

This case arises from a two-vehicle crash that occurred in Plano, Texas.   (Orig. Complaint at ¶ 14-15.)  Plaintiff's son, Henry Zoch III, was in the driver's seat of a 2008 Smart ForTwo vehicle, stopped in traffic on a highway exit ramp, when another motorist slammed into the rear of his vehicle.  (*Id.*)  According to the DPS investigator, the motorist was traveling as

fast as 60-70 mph before she tried to avoid the impact.  Plaintiff's son later died from his injuries.  (*Id.* at ¶ 18.)

Years before the crash, the subject vehicle was first sold as a new vehicle to Louisiana consumers, where the vehicle was first titled, on or about October 13, 2008.  (*See* Title History at 20, Ex. "A.")  Then, over five years later, the vehicle was gifted to a person residing in Texas.  (*Id.* at 21-22.)   At some point later, the vehicle was sold or traded to a Toyota dealership in Plano, Texas.  (*Id.* at 15.)  Ultimately, on or about May 24, 2014, less than five months before the accident, the vehicle was sold, used, to Mr. Zoch III.  (*Id.*)

Plaintiff is a resident of Texas.  (*Id.* at ¶ 1.)  In this suit, he is suing numerous defendants, (*id.* at ¶ 2-9), claiming that the Smart vehicle and its "driver seating system" were defective.  (*Id.* at ¶ 19-39.)   Plaintiff makes one specific allegation as to Magna Germany.   He claims, incorrectly, that "Magna Seating (German) GmbH f/k/a Inteir [sic] Automotive Seating Systems, GmbH designed and supplied the seat, chose the metal used in the seat's anchorage and fittings, and designed the seat-related components and anchorages generally."  (*Id.* at ¶ 21.)

His remaining claims are general, conclusory, and incorrect.  He claims, for example, that Magna Germany had "entered agreements" with other parties "for purpose of supplying the driver's seating system in the subject vehicle for distribution and use in vehicles targeted for sale in the United States, generally, and Texas, specifically."  (*Id.*)  He makes several generic claims against Defendants regarding targeting Texas for the sale of seats, (*id.* at 11 and 23-24), and that Magna Germany was part of a "joint enterprise" to facilitate the sale of the vehicle.  (*Id.* at ¶ 41.)  The rest of his allegations simply lump all Defendants together and generically claim all are responsible under a variety of legal theories.  (*Id.* at ¶ 22-43.)

The real facts, however, show there is no personal jurisdiction over Magna Germany. The company is a citizen of Germany, where it is incorporated and has its principal place of business. (Declaration of Türk Fleischhacker at ¶ 3, attached as Exhibit "B.") Magna Germany has never been a Texas corporation, has never been licensed to do business in Texas, and does not consent to jurisdiction in Texas. (*Id.* at ¶ 9.) Magna Germany is not a parent corporation to any Texas corporation. (*Id.*)

Magna Germany, at all times relevant to this lawsuit, has had no continuous or systematic contacts with the State of Texas. (*Id.* at ¶ 10.) In particular, Magna Germany:

- does not maintain or register an agent for service of process in Texas;
- does not pay or have any obligation for payment of taxes in Texas;
- does not maintain any place of business in Texas;
- does not employ anyone in Texas;
- does not maintain corporate records in Texas;
- does not hold any Texas licenses;
- does not have a distributor, supplier, retailer, or other merchant selling Magna Germany products in or to Texas;
- does not own any real property in Texas;
- does not advertise any products directly to the Texas market;
- does not maintain any offices, manufacturing plants, equipment, directors, officers, agents, post office boxes, bank accounts, telephone or fax numbers, or other tangible assets in Texas; or
- did not make any contracts with the state of Texas.

(*Id.* at ¶ 11.)

Although the subject accident occurred in Texas, Plaintiff's claims did not arise out of any Magna Germany activity in Texas. (*Id.* at ¶'s 5-8.) Magna Germany is a component part supplier to the Smart ForTwo vehicle. The company assembled the seat for the subject vehicle according to the specifications as defined by its customer, smart gmbh. (*Id.*) Magna Germany designed the trim, foam and plastic parts (the "Soft Parts") of the seat. (*Id.*) The company did not design or manufacture the metal structure of the seat, including its anchorages and fittings;

those features were developed by another company selected by smart gmbh. (*Id.*) All of Magna Germany's work with regard to the subject seat was done in Germany. (*Id.*) No part of this work occurred in Texas. (*Id.*) Nothing about the seat was specifically designed for Texas. (*Id.*) Magna Germany has not sold the seat directly to Texas. (*Id.*)

Magna Germany delivered the assembled seat for the subject vehicle to smart gmbh under a supply agreement between the companies. (*Id.* at ¶ 7.) The seat would have been shipped from Germany to Daimler AG's assembly plant (for the Smart vehicle) in France. Magna Germany did not install the seat in the subject vehicle. (*Id.* at ¶ 8.) In fact, once the company supplied the seat, it had no further involvement, direction or control over the transportation, distribution, or sale of the subject vehicle. (*Id.*) It did not enter into any contracts with Daimler AG, or any other entity, regarding the further shipment, distribution, or sale of the vehicles, including the subject vehicle. (*Id.* at ¶ 8, 12.) Magna Germany understands the 2008 Smart ForTwo vehicle was marketed (not by the company) in Asia, North and South America, Africa, Australia and Europe. (*Id.* at ¶ 8.) However, the company does not know the specific final destination of the Smart vehicles or the ultimate place of sale, including for the subject vehicle. (*Id.*)

Magna Germany did not distribute or sell the 2008 Smart ForTwo motor vehicle anywhere, including to Texas. (*Id.* at ¶'s 5-8.) Even the vehicle's manufacturer, Daimler AG, did not sell or distribute the vehicle in the US or Texas. (*See* Aff. of Y. Siebenhaar, attached as Ex. "C.")[1] Magna Germany had no expectation that the subject vehicle would be sold in Texas. (Ex. "B" at ¶ 8.) The company has not directed any advertising or marketing efforts to consumers or businesses in Texas. (*Id.* at ¶ 10.) The seating components over which Magna had

---

[1] Exhibit "C" to this Motion is Daimler A.G.'s state-court special-appearance, verification, and attached proof. Daimler A.G. has also denied that personal jurisdiction is proper over it in this Court. (*See* Docket # 17 at ¶ 11.)

design responsibility are not designed for Texas, and Magna has not sold those parts directly to Texas. (*Id.* at ¶ 7.)

Finally, Magna Germany did not, as alleged by Plaintiff, have a "joint enterprise" with the group of Defendants as to the sale of the vehicle. (*Id.* at ¶ 12.) Magna Germany is a separate corporation from all other Defendants.[2] In sum, Magna Germany has not purposely directed any activity, with respect to the vehicle at issue in this case, towards the state of Texas. (Ex. "B.")

## IV.    Legal Standards

Federal Rule of Civil Procedure 12(b)(2) authorizes the dismissal of a defendant from a lawsuit for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing jurisdiction over the defendant. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000). If an evidentiary hearing is held, a plaintiff must demonstrate that the exercise of jurisdiction is appropriate by a "preponderance of the evidence." *See DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1271 n.12 (5th Cir. 1983). If an evidentiary hearing is not held, the plaintiff need only make a prima facie case of personal jurisdiction. *Johnston v. Multidata Sys*, 523 F.3d 602, 609 (5th Cir. 2008). And while uncontroverted jurisdictional allegations are accepted as true, mere conclusory allegations without factual support (as is the case here), are insufficient to establish personal jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868–869 (5th Cir. 2001). This must be the case; otherwise, every plaintiff could simply plead its way into establishing personal

---

[2] Magna International Inc. is the parent corporation of Magna Seating (Germany) GmbH. Magna Germany, however, is a separate from Magna International Inc. and Magna International of America, Inc. (*See* Ex. "A" attached to Magna International Inc.'s Mot. to Dismiss, incorporated herein.) Magna Germany functions separately from those two corporations and neither of them exercise control over Magna Germany's day to day operations. (*See* Ex. "B", Decl. of Türk Fleischhacker at ¶ 13.) Magna Germany has separate offices and management from those corporations and maintains separate corporate books, bank accounts and accounting. (*Id.*)

jurisdiction in violation of constitutional due-process requirements of purposeful availment and minimum contacts. *Id.* at 870.

## V.     The Texas Long Arm Statute.

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). The Texas long-arm statute, *see* Tex. Civ. Prac. & Rem. Code §17.042, extends jurisdiction consistent with due process under the United States Constitution. *Freudensprung v. Offshore Tech. Serv., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004).

## VI.    General and Specific Jurisdiction.

Due process, however, permits the exercise of personal jurisdiction over a nonresident defendant only when that party has purposely availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the state, and when the exercise of jurisdiction over that party would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "constitutional touchstone" of this inquiry is whether the nonresident defendant has purposefully established minimum contacts in the forum state "such that [it] should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

There are two types of "minimum contacts"—those that give rise to general jurisdiction and those that create specific jurisdiction. *Johnston*, 523 F.3d at 609. The Supreme Court recently rearticulated the standards for both. *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) (general jurisdiction) and *Walden v. Fiore*, 134 S. Ct. 1115 (2014) (specific jurisdiction). Magna Germany is not subject to personal jurisdiction under either one.

8

A.    **Magna Seating (Germany) GmbH Is Not Subject to General Jurisdiction in Texas.**

The bar for sufficient contacts to assert general jurisdiction is high.  In *Bauman*, the Court

observed that the proper consideration when determining general jurisdiction is whether the

defendant's "'affiliations with the State are so 'continuous and systematic' as to render [it]

essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear Dunlop*

*Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (alteration in original). "[O]nly a

limited set of affiliations with a forum will render a defendant amenable to all-purpose

jurisdiction there." *Bauman*, 134 S. Ct. at 760.  For a corporation, "the place of incorporation

and principal place of business" are where it is "at home" and are thus "'paradig[m] . . . bases for

jurisdiction.'" *Id.*   In other words, a corporation's place of incorporation and principal place of

business are the almost exclusive venues for the permissible exercise of personal jurisdiction.  As

the Fifth Circuit recently wrote, it is "incredibly difficult to establish general jurisdiction in a

forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs.,*

*Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014).[3]

Here, the general jurisdiction issue is simple.  Because Magna Germany is a German

corporation, with its principal place of business in Germany, and has no presence in Texas, it is

not "at home" in Texas.  General personal jurisdiction is therefore lacking over the company.

---

[3] The same is true when the corporation conducts business with subsidiaries or affiliates.  For a court to exercise general jurisdiction over a foreign corporation, the corporation itself—not its subsidiary or affiliate—must be "at home" in the forum state. *Air Tropiques, SPRL v. N. & W. Ins. Co., Ltd.*, Civil Action No. H-13-1438, 2014 WL 132046, at *10 (S.D. Tex. Mar. 31, 2014). This makes sense, because a corporation is not "at home" *even in* "every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" *Bauman*, 134 S. Ct. at 760-61; *see also Locke v. Ethicon Inc.*, 2014 WL 5819824 at *5 (S.D. Tex. 2014) ("The plaintiffs' substantial revenue argument cannot withstand the holding in *Daimler*").

**B.      Magna Germany Is Not Subject to Specific Jurisdiction.**

Despite his conclusory jurisdictional allegations, Plaintiff cannot establish specific jurisdiction over Magna Germany because the company has no minimum contacts with Texas, and Plaintiff's claims did not arise out of, or relate to, any activities of Magna Germany in Texas. In contrast to general jurisdiction, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 131 S. Ct. at 2851.

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Monkton Ins. Serv. Ltd.*, 768 F.3d at 433 (citing *Walden v. Fiore*, 134 S. Ct. at 1121). The plaintiff, however, "cannot be the only link between the defendant and the forum." *Walden*, 134 S.Ct. at 1122.   Thus, a plaintiff's cause of action must "arise from" the non-resident's contacts with the forum. *See Felch v. Transportes Lar--Mex*, 92 F.3d 320, 324 (5th Cir. 1996) ("Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action."). It is a claim-specific inquiry, requiring the plaintiff establish specific jurisdiction for each claim asserted.   *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

The Fifth Circuit applies a three-step analysis for the specific jurisdiction inquiry:

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth*, 472 F.3d at 271.[4]

---

[4] If the Plaintiff establishes the first two prongs, then the burden shifts to the Defendant to show that exercising jurisdiction would be unfair or unreasonable. *Seiferth*, 472 F.3d at 271.

1. **Magna Germany has not purposefully directed its activities to Texas or purposely availed itself of the privileges of conducting business in Texas such that it could reasonably expect to be haled into a Texas court.**

The first element cannot be shown because Magna Germany has no contacts at all with Texas and has not purposely availed itself of doing business here.  The company has no presence in Texas, has not sold the seat at issue in Texas, and has directed no advertising or marketing toward the state.  The company's design work on the seat—which did not include designing the seat parts at issue—occurred in Germany pursuant to a German contract with another Germany company.  None of the company's work occurred in, or was directed toward, the state of Texas.

Once Magna Germany delivered the seat to Daimler AG's assembly plant, the company had no control or direction over the shipment, distribution, or ultimate sale of the vehicle.  That was done by third persons.  Magna Germany does not know the specific final destination of the subject vehicles or ultimate place of sale, and it had no expectation that the subject vehicle would be purchased in Texas.  Even the vehicle's manufacturer, Daimler AG, did not sell or distribute the vehicle in the US or Texas.  (*See* Ex. "C.")  If that were not enough, the subject vehicle did not even enter Texas until after it left the stream of commerce.  Magna Germany directed no activities, with regard to the subject vehicle, toward the state of Texas.

2. **There can be no personal jurisdiction over Magna Germany even under a stream of commerce theory.**

Because Magna Germany had no contacts with Texas, Plaintiff must rely on a "stream of commerce" type theory in hopes of showing minimum contacts.   That theory fails in this case for two reasons.  First, the vehicle did not enter Texas until after it left the stream of commerce.  Second, any "contacts" with Texas attributed to Magna Germany were random, fortuitous, attenuated, or resulted from the actions of third parties.

11

**(a)    The vehicle did not enter Texas while in the stream of commerce.**

In the Fifth Circuit, the stream of commerce theory may permit the exercise of personal jurisdiction over a nonresident defendant that delivers its products into the stream of commerce so long as the defendant has an expectation that its products will be purchased by consumers in the forum state. *Seiferth*, 472 F.3d at 273 (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)).[5] However, the stream of commerce theory is constitutionally sufficient "*only* if the defendant's product made its way into the forum state while still in the stream of commerce." *Eddy v. The Printers House, Ltd.*, 627 F. Appx. 323 (5th Cir. 2015) (emphasis added).

That did not occur here. Although there is some indication the vehicle might have passed through a Houston area dealership, the Official Title History from the State of Texas indicates the vehicle was first acquired by persons in Louisiana and first titled in the state of Louisiana. (Ex. "A.") Then, over five years later, the vehicle was transferred to someone in Texas, where it was then titled for the first time in Texas as a used vehicle. (*Id.*) Thus, the subject vehicle exited the stream of commerce in Louisiana. It did not enter Texas while in the steam of commerce. *See Eddy*, 627 F. Appx at 327 ("Once the press was installed in Mississippi, it exited the stream of commerce because the Mississippi buyer was a consumer of the product, not a distributor or retailer.") For this reason, a "stream of commerce" theory cannot constitutionally support exercising jurisdiction in Texas over Magna Germany.

---

[5] *But see Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010) ("[O]ur precedent generally follows Justice O'Connor's plurality opinion in *Asahi*, which requires some "additional conduct"—beyond merely placing the product in the stream of commerce-that indicates "an intent or purpose to serve the market in the forum State." ) This Court should follow Texas' law; otherwise, the difference between federal and state law could lead to forum shopping.

**(b)    "Minimum contacts" under a stream of commerce theory do not include contacts that are random, fortuitous, attenuated, or the result of third party actions.**

Even if the stream of commerce theory applied here, which it does not, there still must be an actual connection between the defendant and the forum state to establish jurisdiction. "The foreseeability required in the products liability context is 'not the mere likelihood that a product will find its way into the forum State. Rather, it is that the *defendant's conduct and connection with the forum State* are such that he should reasonably anticipate being haled into court there.'" *Seiferth*, 472 F.3d at 273 (quoting *World-Wide Volkswagen*, 444 U.S. at 298) (emphasis added). Indeed, contacts by the defendant that are random, attenuated, or fortuitous, or the unilateral activities of third persons are not sufficient. *See Walden v. Fiore*, 134 S. Ct. at 1122 ("First, the relationship [between defendant and forum] must arise out of contacts that the 'defendant *himself*' creates with the forum state.") (emphasis in original); *Irvin v. S. Snow Mfg., Inc.*, 517 F. App'x 229, 231 (5th Cir. 2013) ("This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.").

This connection between a defendant and the forum—as opposed to fortuitous contacts or the actions of others—has long been required to establish specific jurisdiction in product-liability cases. For example, in *World-Wide Volkswagen* and *Asahi*, jurisdiction was not established just because a defendant sold a product that entered the stream of commerce and reached the forum state. In both cases, the Court emphasized that foreseeability alone is not enough; the actual defendant, *as opposed to a third party*, must have some connection with the forum. *See Asahi Metal Ind. Co. v. Super. Ct.*, 480 U.S. 102, 118 (1987) (citing *World-Wide*, Justice Brennan

explained that foreseeability must be tied to a defendant's conduct and connection with forum) (Brennan, C.J., concurring).

This point was strengthened later in another product-liability case, *J. McIntyre Machinery Ltd. v. Nicastro*, 564 U.S. 873 (2011). In *McIntyre*, a British manufacturer of a metal-shearing machine was dismissed for lack of personal jurisdiction. The plurality, led by Justice Kennedy, held that the defendant product maker must target the forum, which did not occur. *Id.* at 881. The concurring opinion, led by Justice Bryer, also held there was no personal jurisdiction. *Id.* at 887-93. In his concurring opinion, which the Fifth Circuit follows,[6] Justice Breyer pointed out that "'something more,' such as special state-related design, advertising, advice, marketing, or anything else" would be necessary to constitutionally exercise personal jurisdiction over the defendant. *Id.* at 889 (Breyer, J., concurring). He also believed that a plaintiff must show that the defendant "'purposefully avail[ed] itself of the privilege of conducting activities' within New Jersey, or that it delivered its goods in the stream of commerce 'with the expectation that they will be purchased' by New Jersey users." *Id.*

Thus, even under a stream of commerce theory, as *World-Wide Volkswagen*, *Asahi*, and *McIntyre* make clear, the defendant (not others) must have a connection (not random, fortuitous, attenuated contacts) with the forum to satisfy due process. When this connection is missing, or it is formed only through the contacts of third persons, there is no jurisdiction.

This is also true in the Fifth Circuit, as *recent* cases illustrate. For example, in *Seiferth*, the court examined the stream of commerce theory in a case involving a helicopter platform accident. *Seiferth*, 472 F.3d at 269. A California corporation, HAI, leased a helicopter to a

---

[6] *See Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 178 (5th Cir.2013) (Justice Breyer's concurring opinion in *McIntyre* "controls here"); *In re Chinese Drywall Products Liability Litigation*, 742 F.3d 576, 586 (5th Cir. 2014) (same).

company known as Air 2, who in turn had one of its pilots design and install a platform on the helicopter in Florida. *Id.* at 269-70. The pilot then transported the helicopter and platform to Mississippi and inspected it there. *Id.* at 272. One day a worker in Mississippi was killed when the platform broke. *Id.* at 270. A lawsuit was brought against HAI and the pilot in Mississippi, both of whom objected to personal jurisdiction. *Id.*

In affirming the dismissal of HAI, the Fifth Circuit explained that even under the stream of commerce theory, HAI did not expect the helicopter would be used in Mississippi. *Id.* at 272. The court noted that the lease of the helicopter did not occur in Mississippi and that there was no geographical limitation as to where Air 2 could take it. *Id.* at 274. According to the court, "[t]he transportation of the helicopter to Mississippi was a unilateral act of Air 2, which under *World Wide Volkswagen* is insufficient to confer personal jurisdiction over HAI." *Id.*

A similar result occurred last year in the product-liability case of *Eddy v. The Printers House, Ltd.*, 627 F. Appx. at 324. There, a worker was injured while operating a newspaper printing press in Texas. He sued the manufacturer of the press, an Indian corporation referred to as TPH, in Texas. *Id.* at 324-25. TPH had originally sold the press to a customer in Mississippi, but that customer later sold it to the business that installed it in Texas. *Id.* at 325. At one point, however, the Indian company shipped spare replacement parts directly to the Texas customer who owned the press. *Id.* The trial dismissed TPH for lack of personal jurisdiction.

The Fifth Circuit affirmed. *Id.* at 327-28. In doing so, the court explained that even under the stream of commerce theory, a defendant's contacts must be more than "random, fortuitous, or attenuated" or "the result of the unilateral action of another party or third person." *Id.* at 326. Yet, according to the court, "the press found its way into Texas not through any

intentional act taken by TPH but through the unilateral activity of third parties." *Id.* at 327.  As a result, the court held that there was no jurisdiction even under a stream of commerce theory. *Id.*

All of these cases—*World-Wide*, *Asahi*, *McIntyre*, *Seiferth*, and *Eddy*—hold that even under a stream of commerce theory there must be some connection between the defendant and the forum, beyond attenuated contacts or those caused by others, to establish purposeful availment.  Yet there is no such connection here between Magna Germany and Texas.

The fact the vehicle ended up in Texas in a crash was completely fortuitous, random, attenuated, and the result of the actions by others.  The vehicle left the stream of commerce in Louisiana, where it was first titled.  Then, years later, it was gifted to yet another person who happened to live in Texas.  The vehicle then found its way to a Plano, Texas dealership.  Finally, the vehicle was purchased, obviously used, by the decedent who, only months later, was involved in a crash in Texas.  This set of circumstances is nothing but random, fortuitous, attenuated, and the result of actions by others.

This is especially true with respect to Magna Germany.  The company's involvement with the vehicle ended six years before the crash.  At that time, the company delivered the assembled seat in Germany under a German agreement with another German company (smart gmbh).  From that point forward, Magna Germany had no involvement or control of the seat or the vehicle.  The seat was installed into the Smart ForTwo vehicle by another German company, Daimler AG, in France.  Yet even Daimler AG, the actual manufacturer of the vehicle, did not sell or distribute the vehicle in the U.S. or Texas.  That was apparently done by yet additional third parties.  By contrast, Magna Germany had no control or involvement with the shipment, distribution or sale of the Smart ForTwo vehicles.  The vehicle was marketed to Asia, North and South America, Africa, Australia and Europe.  However,   Magna Germany had no knowledge

where the seat, installed later in the vehicle by Daimler, would be ultimately shipped and had no expectation that it would make its circuitous, random path to Texas.   The decisions regarding where subject vehicle would be shipped and ultimately sold, or where it would go from there, were made by third persons, some of whom are parties to this action and some apparently not. But the decisions were not made by Magna Germany.   The actual seat parts that Magna Germany designed—which are not even at issue here—were not designed for Texas, and Magna Germany did not market the products in Texas or ship the seat there.   There is no jurisdiction in Texas over Magna Germany.

### 3.   The Supreme Court has rejected unlimited, nationwide jurisdiction over foreign component part suppliers with no contacts to the forum.

Even if the stream of commerce theory applied here, which it does not, the mere fact the Smart ForTwo vehicle was sold in the U.S., and thus *might* end up in Texas, cannot give rise to jurisdiction over Magna Germany.   *See McIntyre*, 564 U.S. at 890-91 (Breyer, J., concurring).   In *McIntyre*, Justice Breyer rejected the argument that "a producer is subject to jurisdiction for a products-liability action so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states." *Id.* at 891. (Emphasis in original) (citation omitted).   He rejected this argument for three reasons.   First, he explained that to adopt the argument would place almost all of the jurisdictional emphasis on the location of the accident and none on a defendant's contacts with the forum. *Id.*   However, this approach, he explained, was rejected in *World-Wide Volkswagen* when the Court held that a defendant's amenability to suit does not travel with the product. *Id.*

Second, Justice Breyer held that a rule where jurisdiction rests on the fact that a product might eventually be distributed to the forum state "cannot be reconciled" with the requirements of "minimum contacts" and "purposeful availment." *Id.* As he explained:

> A rule like the New Jersey Supreme Court's would permit every State to assert jurisdiction in a products-liability suit against any domestic manufacturer who sells its products (made anywhere in the United States) to a national distributor, no matter how large or small the manufacturer, no matter how distant the forum, and no matter how few the number of items that end up in the particular forum at issue.

*Id.*

The third reason Justice Breyer rejected the New Jersey approach surrounded the fact the defendant was a *foreign* company. "Further, the fact that the defendant is a foreign, rather than a domestic, manufacturer makes the basic fairness of an absolute rule yet more uncertain." *Id.* at 982. According to Justice Breyer, a rule that allows jurisdiction over a company that might have its product distributed nationwide "would require every product manufacturer, large or small, selling to American distributors to understand not only the tort law of every State, but also the wide variance in the way courts within different States apply that law." *Id.*

For these reasons, Justice Breyer rejected a broad nation-wide stream-of-commerce theory that allowed jurisdiction over a foreign product manufacturer who had no contacts with the forum and whose only connection with the forum was through third party distributors. Recent cases from the Fifth Circuit and federal district courts in Texas have followed this reasoning. *See In re Chinese Drywall Products Liability Litigation*, 742 F.3d 576, 586 n.11 (5th Cir. 2014) ("In *McIntyre* both the plurality and concurring opinions emphasized that the defendant must have an intent to serve a market in the particular forum state, rather than simply the 'U.S. market.' Thus, the proper inquiry focuses exclusively on forum-specific, rather than

nationwide contacts. Given the Supreme Court's directive in *McIntyre*, our analysis focuses exclusively on TG's potential contacts with Virginia, rather than 'U.S. contacts.'") (internal citations omitted); *Silicon Laboratories v. Cresta Technology Corp.*, 2014 WL 3530817 (W.D. Tex. 2014) (Silicon Labs's theory rests on the idea CrestaTech, by selling a component part to a manufacturer like Hauppauge, which in turn sells finished products in major national retail stores, can fairly foresee being haled into federal court in Texas. The logic of such a theory would subject CrestaTech to personal jurisdiction in all fifty states by virtue of Hauppauge's conduct. If the Due Process Clause is to be reduced to nothing, as the logic of this position would require, it will not be by this Court's order."); *Allstate Ins. Co. v. Interline Brands, Inc.*, 997 F.Supp.2d 501, 510 (N.D. Tex. 2014) ("With all the unaccounted-for variables in this long chain of distribution, the Court cannot reasonably assume enough DuraPro lines reached Texas consumers to qualify as more than random or fortuitous contacts. And even if it could, this long and uncertain distribution chain makes it even more unlikely that Watts could have reasonably foresaw its product reaching Texas consumers.").

Under the reasoning of these cases, there can be no jurisdiction over Magna Germany in this case. Setting aside the fact the subject vehicle fortuitously ended up in Texas, which is enough to defeat a stream of commerce theory, there is no other relationship between Magna Germany, Texas, and this lawsuit. To find jurisdiction over the company here would be to effectively find that it is subject to jurisdiction in all 50 states. That would reduce the due process clause to nothing. *Silicon Labs*, 2014 WL 3530817 at * 3. Finally, Magna Germany (like McIntyre) is a foreign defendant. The unfairness found in *McIntyre* is just as present here, if not more pronounced, since Magna (unlike McIntyre) was a component part supplier. The fact

the subject vehicle ended up being sold in Texas does not confer jurisdiction over Magna Germany.[7]

### 4.   Plaintiff cannot show the second element--there is no nexus between Plaintiff's claims and any contact by Magna Germany with Texas.

Even assuming Plaintiff could show that Magna Germany had "minimum contacts" with Texas, even though it did not, he cannot show a nexus between his causes of action and any contacts by Magna Germany in Texas. *See Irvin v. S. Snow Mfg., Inc.*, 517 F. App'x at 232 (court assumed without deciding that the defendant had "minimum contacts" with the forum but held there was no nexus between those contacts and plaintiff's cause of action).   The Fifth Circuit has adopted the "but for" test for making these determinations. *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 319 n.8 (3d Cir. 2007) (citing *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n. 21 (5th Cir.1981). The "but for" test, as the name indicates, requires that the Plaintiff show his claim would not have arisen without the defendant's contacts with the forum state. *Breathwit Marine Ltd. v. DeLoach Marine Serv., LLC*, 994 F. Supp. 2d 845 (S.D. Tex. 2014) (citing *Sandy Lane*, 496 F.3d at 318--20). *But see Moki Mac v. Drugg*, 221 S.W.3d 569, 574 (Tex.2007) (follows substantial connection test between contacts and cause of action.)

---

[7] On this issue, Plaintiff may cite to *Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081, 1085 (5th Cir. 1984) or a recent case from this Court (different Magistrate) that relied on *Bean Dredging. See Verde v. Stoneridge, et al.* 2015 WL 1384373 (E.D. Tex. 2015). Those cases do not apply here for two reasons. First, there is a serious question whether 30 year-old *Bean Dredging* is even good law on this issue after *Asahi* and especially after *McIntyre*. The *Bean Dredging* case is often distinguished, (*e.g. Seiferth*, 472 F.3d at 274n.3), and has only been cited once by the Fifth Circuit since *McIntyre* was decided in 2011, and the case was not followed then. *See Irvin v. S. Snow Mfg., Inc.*, 517 F. App'x 229, 231-32 (5th Cir. 2013). Most recently, in 2014, the Fifth Circuit, relying on Justice Breyer's concurrence in *McIntyre*, held that it was focusing in that case on the defendant's contacts with the forum state as opposed to its contacts with the US as a whole. *See In re Chinese Mfg. Drywall*, 742 F.3d at 586 n.11. Second, *Bean Dredging* and *Verde* do not apply here because of critical fact differences. In *Bean Dredging*, the defendant testified that it knew its products were being sold in the forum state. 744 F.2d at 1082-83. The defendant also had a plant in Washington, along with "major customers" who purchased the products in Pennsylvania, Oregon, Arizona, California, Kansas, New York, Massachusetts, Michigan, and Texas (next to the forum state). *Id.* at 1082. In *Verde*, the defendant *himself* actually shipped the product at issue to the forum state (Texas). 2015 WL 1384373 at * 3. None of those facts are present in this case. Just the opposite is true. Therefore, even assuming *Bean Dredging* (and *Verde*) is good law on this point, that case (and *Verde*) does not apply factually.

Plaintiff cannot satisfy the "but for" test, or any other test, here because there were no Magna Germany contacts with Texas from which Plaintiff's claims could have arisen. Magna Germany did not even design the anchorage seat parts on which Plaintiff bases his claim. And the design and manufacture work that Magna Germany *did* perform was done in Germany. None of this work occurred in Texas. Therefore, Plaintiff's design-defect and manufacturing-defect claims (under product-liability or negligence) could not have arisen from any Magna Germany contacts with Texas. *See Seiferth*, 47 F.3d at 275-76.

In *Seiferth*, the Fifth Circuit held that there was no personal jurisdiction in Mississippi over a defendant with regard to plaintiff's design-defect claim because the defendant designed the product at issue (a helicopter platform) in Florida, not in Mississippi. *Id.* at 275. In other words, none of the defendant's contacts related to plaintiff's design defect claim and, as a result, there was a lack of personal jurisdiction regarding that claim. *Id.* The same is true in this case.

A more recent Fifth Circuit case (from 2015) is also instructive. *See Eddy v. The Printers House*. 627 F. Appx. at 327. In *Eddy*, the court held that a defendant's shipping of replacement printing press parts directly to Texas were not contacts with the forum that could give rise to Plaintiff's claim that a printing press was defective when there was no claim that the shipped parts caused any injury. *Eddy*, 627 F. Appx. at 327-28. In other words, the only contacts with Texas by the defendant did not give rise to the claims in the lawsuit. *Id.* As a result, the Plaintiff could not establish a prima facie case of specific jurisdiction. *Id.* at 328.

In this case, Magna Germany did not ship the subject seat or vehicle to Texas. Nor did it market the parts in Texas, or have other contacts that could give rise to Plaintiff's claims. Thus, under *Eddy*, the Plaintiff in this case cannot possibly show the second element required to establish specific jurisdiction over Magna Germany.

C.     **No Vicarious Jurisdiction Can Be Imparted on Magna Germany.**

Plaintiff's Complaint, though unclear, apparently tries to link all defendants together, perhaps in hopes of spreading jurisdiction from one defendant to the next. For example, Plaintiff pleads, in a conclusory fashion, that Defendants were engaged in a "joint enterprise" to sell the vehicle, (Pl.'s Orig. Compl. at ¶ 41), and that Magna Germany had "entered [into] agreements" with Magna International and other Defendants "for the purpose of supplying the driver's seating system in the subject vehicle for distribution and use in vehicles targeted for sale in . . . Texas, specifically." (Pl.'s Orig. Compl. at ¶ 21.)

These bare pleadings cannot confer jurisdiction, where it does not otherwise exist, upon Magna Germany. As an initial matter, Plaintiff's "joint enterprise" claim fails as a matter of law. *See Int'l Elevator Co. v. Garcia*, 76 S.W.3d 778, 783 (Tex. App.—Houston [1st Dist.] 2002, no pet.) ("Neither party has cited a case, nor can we identify any authority, that addresses personal jurisdiction based on a joint enterprise theory. International Elevator [defendant] contends Texas has specifically rejected the argument that a non-resident's contacts may be imputed to another non-resident to support personal jurisdiction. We agree.") (citing *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995).

Moreover, Plaintiff's efforts to spread jurisdiction from *any* defendant to Magna Germany legally fails. Simply doing business with a company that may have contacts with Texas does not confer personal jurisdiction. *See Freudensprung*, 379 F.3d at 346 ("As a general rule . . . the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated."); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("A business relationship with a company in the forum is clearly

insufficient. In simple terms, doing business with a company that does business in [Texas] is not the same as doing business in [Texas].").

The claims also fail under the facts. Magna Germany was party to an agreement with smart gmbh with respect to the seat, but it had no contract or agreement, as alleged by Plaintiff, that involved the distribution or sale of the subject vehicle in Texas. (Ex. "B" at ¶ 8.) Even the vehicle's manufacturer, Daimler AG, did not sell or distribute the vehicle in Texas. (Ex. "C.") Further, Magna Germany is a separate corporation from all other Defendants, (ex. "B" at ¶ 12), and maintains corporate separateness from Magna International Inc. and Magna International of America, Inc. (*Id.* at ¶ 13.)

And even if Texas law allowed "joint enterprise" personal jurisdiction, which it does not, there was no such enterprise here. With respect to Magna Germany, there was no "joint enterprise" among the group of Defendants for the purpose of facilitating the sale of the subject vehicle. (Ex. "B" at ¶ 12.) Magna Germany is a separate corporation from all of the other Defendants in this case. (*Id.*) It had no equal voice or right to be heard with regard to the sale of the subject vehicle. (*Id.*) In fact, as stated above, Magna Germany had no involvement in or control of the distribution or sale of the subject vehicle, or its seating system, in the United States, generally, or in Texas, specifically. (*Id.*) There simply is no basis for vicarious jurisdiction with respect to Magna Germany, despite Plaintiff's conclusory allegations that suggest otherwise.[8]

---

[8]  Plaintiff does not make any alter ego or agency claim between or among Magna International Inc., Magna International of America, Inc. or Magna Seating (Germany) GmbH, for purposes of establishing personal jurisdiction over Magna Germany. And it would be futile to do so. First, there can be no showing in this case that personal jurisdiction exists over Magna International Inc. or Magna International of America, Inc. Second, and as explained above, those two corporations are separate from Magna Germany and they do not exercise control over the day to day operations of the company. (Ex. "B" at ¶ 13.) Thus, there is no basis for alter ego or agency jurisdiction had it even been asserted.

**VII.    Exercising Jurisdiction Over Magna Germany Does Not Comport with Due Process.**

Even when general or specific jurisdiction exists, courts must not exercise jurisdiction over a defendant when doing so would offend traditional notions of fair play and substantial justice. *Ruston Gas Turbines, Inc.*, 9 F.3d at 421. On this issue, the courts examine: (1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *Id.*

Here, this issue should not even be reached because there are no minimum contacts between Magna Germany and Texas. *See Burger King Corp. v. Rudzewicz*, 417 U.S. at 476. Setting aside that issue, however, a consideration of fair play and substantial justice would not permit this Court to assert jurisdiction over the Magna Germany in this case.

It is no coincidence that in recent Supreme Court jurisdictional cases involving *foreign* product manufacturers, a majority of the Court held that exercising jurisdiction over the foreign companies would violate notions of fair play and substantial justice. *See e.g., Bauman*, 134 Sp. Ct. at 763 ("Considerations of international rapport thus reinforce our determination that subjecting Daimler to the general jurisdiction of courts in California would not accord with the "fair play and substantial justice" due process demands."); *McIntyre*, 564 U.S. at 892 ("Further, the fact that the defendant is a foreign, rather than a domestic, manufacturer makes the basic fairness of an absolute rule yet more uncertain.") (Breyer, J., concurring); *Asahi*, 480 U.S. at 114 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.").

This same reasoning applies here.  Magna Germany is a German corporation with its headquarters in Germany and no presence in Texas.  The numerous burdens on the company to litigate this case in Texas would be severe.  (Ex. "B" at ¶ 14.)  Magna Germany is a foreign corporation with no contacts with Texas.  Defending this case in Texas would require Magna Germany personnel to travel to Texas as the lawsuit progresses, to exchange documents (virtually all of which are in German) and other evidence with other parties and attorneys in Texas, and to attend the trial of this action in Texas.  (*Id.*)  Further, Magna Germany's headquarters, in Sailauf, Germany, is over 8000 miles from the federal district court in Tyler, Texas.  There are no direct flights between Sailauf, Germany, and Tyler.  And the flight time between Frankfurt, Germany (an hour from Sailauf) and DFW Airport (over one hundred miles from Tyler) ranges from 12-20 hours and the cost ranges from €1100- €5100 ($1254-$5814).  The difficulties of travel, communications, and the defense of this lawsuit are further complicated by the fact the two locations are seven time zones apart.  These facts alone warrant against jurisdiction. *See McIntyre*, 564 U.S. at 892; *Asahi*, 480 U.S. at 114.

Also, the Plaintiff's interest in obtaining relief against Magna Germany is not compelling.  Magna Germany did not even design or manufacture the seat parts forming the basis of Plaintiff's complaint.  Further, Plaintiff has already sued numerous other parties who allegedly made, distributed, and sold the subject vehicle.  Plaintiff has sued the designer manufacturer of the vehicle (Daimler AG),[9] the alleged marketer of the vehicle in Texas (Mercedes Benz USA),[10] and the alleged distributors and/or sellers of the vehicle in the US and Texas (Smart USA

---

[9]  Daimler AG admits to designing and manufacturing smart vehicles but has objected to personal jurisdiction.
[10]  MBUSA has denied marketing the vehicle.

Distributor, LLC and PAG Distributor S1, LLC).[11]   Plaintiff, therefore, is not left without a possible remedy.

Finally, given that the vehicle exited the stream of commerce in Louisiana and spent the vast majority of its time there, and not in Texas, the state of Texas has no particular compelling interest in adjudicating the dispute in Texas.   In short, the exercise of jurisdiction over Magna Germany would be unfair, onerous and unreasonable, and will not be "consistent with traditional notions of fair play and substantial justice." *Asahi*, 480 U.S. at 116.

## VIII.   Conclusion.

There is no general or specific jurisdiction over Magna Seating (Germany) GmbH, and exercising jurisdiction over the company in Texas would offend traditional notions of fair play and substantial justice.   All claims against Magna Germany should be dismissed.

---

[11]  PAG Distributor represents it was formerly known as smart USA Distributor LLC.  The company reports at this time, based on available information, it is unable to admit or deny that it distributed the subject vehicle.  It denies selling the vehicle to Mr. Zoch. (It appears, however, that Mr. Zoch was the second owner of the vehicle.)

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.
701 Brazos Avenue, Suite 1500
Austin, Texas  78701
(512) 708-8200
(512) 708-8777

By:   /s/ John W. Chambless II
      John W. Chambless II (Attorney-in-Charge)
      Texas State Bar No. 00796334
      E-mail:  jchambless@thompsoncoe.com

      Israel Flores, Jr.
      Texas State Bar No. 24074209
      THOMPSON COE COUSINS & IRONS, LLP
      700 North Pearl Street, 25th Floor
      Dallas, TX  75201
      E-mail: iflores@thompsoncoe.com
      (214) 871-8200 Phone
      (214) 871-8209 Facsimile

      **ATTORNEYS FOR DEFENDANT**
      **MAGNA SEATING (GERMANY)**
      **GMBH**

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2016, a copy of the foregoing was filed electronically.   Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's system.

/s/ John W. Chambless II
John W. Chambless II


Jeffrey T. Embry
George Cowden IC
Hossley & Embry, LLP
320 S. Broadway, Ste. 100
Tyler, Texas  75702
jeff@hossleyembry.com
george@hossleyembry.com


Kurt C. Kern
Kurt.kern@bowmanandbrooke.com
Tanya B. Scarbrough
Tanya.scarbrough@bowmanandbrooke.com
Craig D. Dupen
Craig.dupen@bowmanandbroke.com
BOWMAN AND BROOKE LLP
2501 N. Harwood Street, Suite 1700
Dallas, TX 75201